IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-00516-BR

| | |
|---|---|
| **Infernal Technology, LLC & Terminal Reality, Inc.**, <br><br>     Plaintiffs, <br><br> v. <br><br> **Epic Games, Inc.**, <br><br>     Defendant. | **Order** |

The Federal Rules provide the parties with a set of baseline rules that govern the discovery process. The parties can, in large part, agree to modify these rules as they see fit. *See* Fed R. Civ. P. 29. And the Rules provide the court with multiple tools to shape the discovery process to fit the needs of the case. *See, e.g., id.* 26(b)(2). But when, as is the case here, there isn't a court order modifying the discovery rules or an agreement between the parties to do so, the parties must abide by the rules as written.

Plaintiffs Infernal Technology, LLC and Terminal Reality, Inc. (collectively Infernal) claim that Defendant Epic Games, Inc. unreasonably insisted that Infernal depose one of its Rule 30(b)(6) designees on 33 topics in seven hours on one day. It asks the court to require Epic to make its designee available for another deposition. The Federal Rules, however, explicitly allow Epic to take that position. Infernal's recourse was to ask the court to extend the time for the designee's deposition. But it did not do so before the close of fact discovery, and thus the court will not compel Epic to produce its designee again.

I.  Background

In November 2019, Infernal sued Epic, claiming that it had infringed two of Infernal's patents that deal with lighting and shading in videogames. On June 15, 2021–less than three weeks before the close of an almost 18-month-long fact discovery period–Infernal served Epic with six separate 30(b)(6) deposition notices. The notices contained 53 deposition topics spread out over 5 days.

After Epic received the notices, it responded in various ways. Right off the bat, Epic told Infernal that it was "not producing six separate witnesses on six separate days to accommodate the six different notices [Infernal] served on Epic[.]" Email from Douville to Kula (June 17, 2021 7:49 a.m.), D.E. 130–16 at 2. Epic followed up by informing Infernal that it would designate three individuals to testify on its behalf and that they would only appear to testify on one day each.

Among the individuals Epic designated to testify on its behalf was Nick Penwarden, Epic's Vice President of Engineering. Epic designated him to testify on 33 topics. As the parties informally discussed issues related to Epic's Rule 30(b)(6) deposition, Epic told Infernal that Penwarden would only be available for his deposition on June 23, 2021. And while several of Epic's formal designations reflected that position, one said he would also appear on June 25, 2021.

Penwarden appeared at the June 23, 2021 deposition prepared to testify on all 33 topics. Yet Infernal questioned him for slightly less than two hours and on only a handful of the topics Epic has designated him to testify about. At the end of Infernal's examination of Penwarden, Epic asked if Infernal intended to question him about any of the other topics he was designated to testify about. Infernal said it did not. So Penwarden's deposition ended. Later that day, Epic notified Infernal that it would "not be making anyone available to testify on topics for which Mr. Penwarden was prepared to testify today . . . and will be seeking an emergency protective order." Email from Morehan to Plaintiffs' Counsel (June 23, 2021 3:55 p.m), D.E. 130–23 at 2.

2

The next day, Infernal appeared at the designated date and time to keep deposing Penwarden on the topics it noticed for that day. *See* June 24, 2021 Dep. Tr., D.E. 130–11. But, as Epic forecasted, Penwarden did not show up to testify. Nor did he appear at any other depositions for the topics he was designated to testify about. Since then, Epic has refused to have anyone else testify on those topics.

Epic moved for a protective order on June 27, 2021. Mot for Protective Order, D.E. 129. It asked the court to prohibit Infernal "from taking another Rule 30(b)(6) deposition of Epic on technical topics for which Epic already provided a prepared witness[.]" *Id.* at 1.

Shortly after Epic filed its motion, the fact-discovery period ended on July 2, 2021. *See* Order Modifying Deadlines at 1, D.E. 135.

About two weeks after discovery closed, Infernal moved to compel Epic to produce someone to testify about the remaining Penwarden topics. D.E. 138. It argued that since Epic improperly required that Penwarden's deposition occur on one day, "the Court should order Epic to produce a witness or witnesses to testify about the topics-at-issue promptly." *Id.* at 4.

## II. Discussion

The Federal Rules allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The rules provide several tools, including depositions by oral examination, to obtain discovery from other parties. *Id.* 30.

While Rule 30 refers to the deposition of a "person," it also allows a party to "name as the deponent" an organization such as "a public or private corporation[.]" *Id.* 30(a)(1), (b)(6). Along with the general requirements for a deposition notice, a notice to an organization "must describe with reasonable particularity the matters for examination." *Id.* 30(b)(6). The organization must

3

then designate one or more persons to testify on its behalf "about information known or reasonably available to" it on the listed topics. *Id.* Each designee must then appear and participate in a deposition that may last no longer than seven hours over the course of one day. *Id.* 2000 Advisory Committee Notes Subdivision (d).

### A. Standard for a Motion to Compel and Motion for Protective Order

The discovery process does not always run smoothly. So the Rules also allow a party seeking discovery to ask the court to compel other parties to comply with their obligations under the Federal Rules. Fed. R. Civ. P. 37(a). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.* v. *Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

The Rules also allow a party who is the subject of a discovery request to seek a protective order restricting the scope or manner of discovery. Fed. R. Civ. P. 26(c)(1). That order may forbid certain discovery, set specific terms governing discovery, or limit the scope of matters that may be inquired into. *Id.* The party seeking the protective order bears the burden of showing good cause for the court to issue it. *Martin* v. *Bimbo Foods Bakers Distribution, LLC*, 313 F.R.D. 1, 6 (E.D.N.C. 2016).

Here Epic is both resisting discovery and seeking a protective order. So it bears the burden of showing that its position on the Penwarden deposition was correct. On both of the remaining issues in dispute,[1] Epic has met its burden.

---

[1] At the time of filing, there was a dispute between the parties about whether Epic would designate someone to testify about financial documents produced in the closing days of the fact-discovery period. At the hearing on the parties' discovery motions, they explained that they had resolved this issue.

4

### B. Epic's Motion for a Protective Order is moot since the time allotted for fact discovery under the scheduling order has expired.

Epic asks the court for an order preventing Infernal from "taking another Rule 30(b)(6) deposition of Epic on technical topics for which Epic already provided a prepared witness[.]" Mot. for Protective Order at 1. Yet since Epic filed its motion, the fact discovery portion of this case has ended.[2] So at this point Infernal cannot depose Epic any further barring an agreement by the parties or a court order. Thus, the court denies[3] the motion for a protective order as moot.

### C. Epic has fulfilled its obligations under the Federal Rules, so the court will deny Infernal's Motion to Compel.

Infernal's motion is based on two arguments. First, that Epic acted unreasonably in insisting that Penwarden's deposition take place on one day and in seven hours. And second, that Epic failed to live up to its commitment to produce Penwarden to testify on a second date. Upon inspection, neither of these arguments is persuasive.

#### 1. The Federal Rules required Infernal to complete Penwarden's deposition in seven hours on one day unless the parties agreed otherwise or the court authorized a departure from the rule.

Infernal's main argument is that Epic improperly insisted that it depose Penwarden about all 33 topics in seven hours in one day. It maintains that neither the Federal Rules nor caselaw justify Epic's position. But contrary to Infernal's claims, the Federal Rules explicitly resolve this

---

[2] Infernal has not asked to reopen the fact discovery period as part of its motion to compel. Under the court's Local Civil Rules, Infernal would have had to explicitly ask for this relief in its motion. Local Civil Rule 7.1(b)(1) ("All motions shall be concise and shall state precisely the relief requested."). But even if it had, it likely could not show the level of diligence necessary to establish good cause under Rule 16(b)(4) to do so. Infernal intentionally waited until the end of an 18-month-long discovery period to notice Epic's deposition and then waited weeks after this dispute arose and discovery ended to bring its motion. By proceeding in this way Infernal ran the risk that the fact discovery period would expire without it conducting all the discovery it wanted to. *See Channing v. Equifax, Inc.*, No. 5:11-CV-293-FL, 2012 WL 2049918, at *1 (E.D.N.C. June 6, 2012) (explaining that a "scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.").

[3] If the motion were not moot, however, the court would grant the motion for the same reasons that it is denying Infernal's motion to compel.

5

question in Epic's favor. If Infernal objected to Epic's stance, it should have promptly brought the matter to the court's attention and asked for more time to depose Penwarden.

Resolution of this dispute requires the court to interpret Rule 30's language. As with statutes, the court must "give the Federal Rules of Civil Procedure their plain meaning[.]" *Pavelic & LeFlore* v. *Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989). And when the court determines that a rule's text is "unambiguous, judicial inquiry is complete." *Id.* (quoting *Rubin* v. *United States*, 449 U.S. 424, 430 (1981)). So the court's analysis of this issue begins—and ends—with the text of Rule 30.

Under the Rules when an organization receives a Rule 30(b)(6) notice it takes on several obligations. Among them is the duty to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf[.]" Fed. R. Civ. P. 30(b)(6). The Rules leave the number and identity of the designees completely within the testifying organization's discretion. So if an organization believes that one designee is all that is necessary to meet its obligation under the rules, it need not designate anyone else.

The Rules do not, however, take such a *laissez-faire* attitude towards the time a designee will have to spend testifying. The Advisory Committee Notes provide that each designee's deposition is subject to the one day, seven-hour limit set out in Rule 30(d)(1). *Id.* 2000 Advisory Committee Notes Subdivision (d).

Rule 30's language on these points is unambiguous. An organization may designate one or more people to testify on its behalf and each designee's deposition is presumptively limited to seven hours on one day.

So could Epic, consistent with the Rules, designate Penwarden to testify about 33 topics? Yes, it could. And could Epic, consistent with the Rules, insist that Infernal complete Penwarden's

deposition in seven hours on one day? Yes, it could. Since Epic's position complied with Rule 30, Infernal is not entitled to an order compelling Epic to do anything more.

Infernal disagrees with this conclusion and points to a case from this district, *Quality Aero Technologies, Inc.* v. *Telemetrie Elektronik GmbH*, 212 F.R.D. 313 (E.D.N.C. 2002), to support its position. In that case, the court held that "there is no aspect of the Rules which either restricts a party to a single 30(b)(6) deposition or restricts the allotted time for taking a 30(b)(6) deposition." *Id.* at 319. The opinion reached that conclusion based on the language in the 1993 Advisory Committee Notes that "expressly state[s] that for purposes of calculating the number of a [sic] depositions in a case, a 30(b)(6) deposition is separately counted as a single deposition, regardless of the number of witnesses designated." *Id.* Thus, Infernal claims, Epic's position on Penwarden's deposition "has no legal merit." Resp. to Mot. for Protective Order at 7.

The court, however, does not find *Quality Aero* persuasive. As outlined above, the plain language of Rule 30 and the 2000 Advisory Committee Notes contradict its claim that the rules do not restrict the time for deposing a Rule 30(b)(6) designee.[4] There is no exception to the durational limit for individuals designated to testify on many topics, and the court may not read a provision into the rule that its authors did not see fit to include. *See Harris* v. *Nelson*, 394 U.S. 286, 298 (1969) ("We have no power to rewrite the Rules by judicial interpretations."); *Iselin* v. *United States*, 270 U.S. 245, 251 (1926) ("To supply omissions transcends the judicial function.").

---

[4] The current language of Rule 30 also conflicts with *Quality Aero*'s holding about the number of times an organization can be deposed under Rule 30(b)(6). As currently written, a Rule 30(b)(6) notice names the organization as the "deponent." This language is relevant because the Rule prohibits conducting a deposition when "the *deponent* has already been deposed in the case" unless the parties agree to the deposition or the court allows it. Fed. R. Civ. P. 30(a)(2)(A)(ii) (emphasis added). But when *Quality Aero* was written, Rule 30 only restricted a party's ability to take a second deposition if "the *person* to be examined already has been deposed in the case[.]" *Id.* 30(a)(2)(B) (2001) (emphasis added). So, arguably, the language in effect in 2002 would only prohibit multiple depositions of natural persons, not organizations.

7

And *Quality Aero*'s citation to the 1993 Advisory Committee Notes fails to bolster its argument. That Note deals with how the deposition of multiple designees in response to a Rule 30(b)(6) counts against the total number of deposition allowed by the court. But the 1993 Note says nothing about the durational limit of each designee's deposition. That issue is addressed in the 2000 Advisory Committee Note and presumptively limits each designee's deposition to seven hours on one day.

The conflict between *Quality Aero*'s holding and the language of Rule 30 have led many courts to reject its reasoning. *See Vasquez* v. *Leprino Foods Co.*, No. 117CV00796AWIBAM, 2021 WL 2661451, at *14 (E.D. Cal. June 29, 2021); *City of Las Cruces* v. *United States*, No. 17–809, 2021 WL 330062, at *7 (D.N.M. Feb. 1, 2021); *Duran* v. *Sara Lee Corp.*, No. 1:11-CV-00313, 2013 WL 12308200, at *1–4 (W.D. Mich. May 3, 2013); *Porto Venezia Condo. Ass'n, Inc.* v. *WB Fort Lauderdale, LLC*, No. 11–60665-CIV; 2012 WL 2339703, at *3 (S.D. Fla. June 14, 2012); *State Farm Mut. Auto. Ins. Co.* v. *New Horizont, Inc.*, 254 F.R.D. 227, 234 (E.D. Pa. 2008); *Friedman* v. *24 Hour Fitness USA, Inc.*, No. CV 06–6282, 2008 WL 11338168, at *2 n.5 (C.D. Cal. Nov. 14, 2008); *Foreclosure Mgmt. Co.* v. *Asset Mgmt. Holdings, LLC*, No. 07–2388-DJW, 2008 WL 3895474, at *2–3 (D. Kan. Aug. 21, 2008); *In re Sulfuric Acid Antitrust Litig.*, No. 03–C–4576, 2005 WL 1994105, at *3–4 (N.D. Ill. Aug. 19, 2005).

But what about Infernal's claim that this outcome will make it impossible to get the information it needs to pursue its claims since it could only spend 13 minutes with Penwarden on each topic? The Rules address that too. Rule 30(d)(1)'s durational limit can be modified by the court. And the court "must" extend that limit if the extension is "consistent with Rule 26(b)(1) and (2)" and it is "needed to fairly examine the deponent[.]" Fed. R. Civ. P. 30(d)(1). So knowing Epic's position, Infernal should have come to the court and asked for more time to depose

8

Penwarden. It did not do so and, instead, waited until after the fact-discovery period ended to file its motion.

Since Epic's position complied with its obligations under the Federal Rules, Infernal has no right to have the court compel Epic to do anything else.

### 2. The parties' correspondence and course of conduct demonstrate that Epic did not agree to have Penwarden testify on a second date.

Infernal also argues that the court should require Epic to honor its commitment to produce Penwarden for another deposition on damages issues. Epic responds that the June 25th date included in its designation notice was a scrivener's error, and that the record reflects that both sides knew Penwarden was only going to testify on June 23rd.

A review of the record supports Epic's position. When the parties were discussing scheduling for the Rule 30(b)(6) depositions, Epic consistently maintained that Penwarden was only available for a deposition on June 23rd and that other designees would testify on June 25th. Email from Morehan to Plaintiffs' Counsel (June 23, 2021 3:55 p.m.), D.E. 144–12 at 2; Email from Douville to Kula (June 17, 2021 7:49 a.m.), D.E. 130–16 at 2–3; Email from Douville to Kula (June 14, 2021 4:17 p.m.), D.E. 130–16 at 5–6. Infernal's correspondence also reflects an understanding that Penwarden was only going to testify on June 23rd. *See* Email from Kula to Defense Counsel (June 24, 2021 5:30 p.m.), D.E. 144–15 at 3–4 (identifying "June 22" as "the night prior to the deposition for which Epic produced Mr. Penwarden as its designee").

There are also several other items in the record that support the conclusion that there was no agreement for Penwarden to appear on June 25th. The transcript from Penwarden's deposition makes no mention of such an agreement when Epic said that he was designated to testify on all topics that day. D.E. 130–24 at 9–10. There is no reference about such an agreement in the transcript from their June 24 meeting about this dispute despite Epic saying that it did not believe

9

Infernal was entitled to depose him further. D.E. 130–25. Epic also notes that Infernal did not provide Penwarden or Epic's counsel with the necessary information to participate in a remote deposition on June 25th. There is also no indication that Infernal attempted to proceed with Penwarden's deposition on June 25th. All of these items undermine Infernal's claim that there was an agreement for him to appear that day.

So the court agrees with Epic that the reference to June 25th was a typographical error and that it had not agreed to produce Penwarden for a deposition on June 25, 2021. Thus, Infernal has no right to have its motion granted on this basis.

### III. Conclusion

For all these reasons, the court denies Epic's motion for a protective order as moot and denies Infernal's motion to compel. Each party will bear their own costs.

Dated: August 6, 2021

_____
Robert T. Numbers, II
United States Magistrate Judge

10

Case 5:19-cv-00516-BR   Document 148   Filed 08/09/21   Page 10 of 10